[Crim. No. 15926. Fourth Dist., Div. One. May 29, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE EDWARD EPPERSON, Defendant and Appellant.

COUNSEL

Boyce & Frausto and Robert E. Boyce for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LEWIS, J.—Clarence Edward Epperson was convicted of violating Penal Code section 496, subdivision 1 (receiving stolen property). He admitted two prior felony convictions: a violation of 18 United States Code section 2312 (transporting a stolen motor vehicle in foreign commerce) and a vio-

lation of Penal Code section 484g (fraudulent use of a credit card). He did not admit he had not remained free of prison custody or commission of an offense resulting in a felony conviction for five years, and the parties agree he did remain free of commission of an offense resulting in a felony conviction for over five years. Probation was denied and Epperson was sentenced to prison for a term of five years: the upper term of three years for receiving stolen property and an enhancement of one year each for the two prior felony convictions pursuant to Penal Code section 667.5, subdivision (b). He appeals. We strike the enhancements and otherwise affirm.

In April 1982, Epperson bought a "salvage" vehicle, a 1974 ½ MG, which had been in an accident, from Mr. Manning, dba British Foreign Salvage in San Diego. Title was made out to "Valley Imports of Reseda" owned by Mrs. Epperson. About 10 days later, a 1974 MG owned by Mr. Archambault was stolen from in front of his residence in Reseda, California. The next day, on April 26, 1982, the stolen car, with the VIN number from the "salvage" car affixed in the dashboard, was sold by Epperson to Mr. Hamawi, with the paperwork matching that VIN number, a "VIN swap" in the language of the stolen car business. Hamawi did not know the car was stolen and resold it to Mr. Crane and Miss McCrystal. The stolen MG sold to Hamawi by Epperson was not a car that had been wrecked and repaired as Epperson later claimed.

## I

■ Epperson alleges it was reversible error for the court to permit prosecution witnesses Pray and Smith to testify as to statements made by Epperson on the witness stand in a civil suit brought by Hamawi. Pray testified he was an attorney who sued Epperson on behalf of Hamawi, and Epperson testified he had purchased the "salvage" car, done work on the car to fix it up, and sold it to Hamawi. Epperson's counsel objected and moved to strike on the ground of hearsay. The objection was correctly overruled, since the statement of Epperson offered by the prosecution is precisely within the "admissions" exception of Evidence Code[1] section 1220.

Smith, the investigating officer, testified Epperson said he fixed up the car and did repairs and replaced the bumpers with a new type bumper. Epperson's counsel objected to Smith's testifying because he had not been excluded from the courtroom as the other witnesses had, and the objection was overruled.

■ Epperson asserts a *sua sponte* duty of the trial court to have excluded the testimony as unduly prejudicial under section 352, cites cases for the

[1]All statutory references are to the Evidence Code unless otherwise specified.

proposition that where evidence is objected to on this ground, or where prejudice is alleged and called to the attention of the trial court, the court must show on the record a consideration of the prejudice and probative value, and argues that counsel objected to this testimony as irrelevant, creating the need to exercise section 352 discretion. This testimony was not objected to as irrelevant. The relevance objections were to a different line of testimony. No objection having been made under section 352, no grounds having been offered for excluding the evidence as required by section 353, subdivision (a), and there being no prejudice except the due prejudice of relevant, probative evidence, there was neither a need for the court to exercise any discretion to exclude the evidence nor a need for it to make any record as to the reason for not doing so.

## II

■ Epperson next contends without merit or factual support that comments by the prosecutor on his failure to testify were misconduct and caused reversible error. The prosecutor argued the reason for Epperson claiming in his testimony at the civil trial that he had fixed the front end of the car and changed the bumper was to support his contention in that trial that it was the wrecked and repaired car he sold Hamawi and not the stolen one. Since the car he sold Hamawi had not been repaired or had the front end changed, this argument was fair comment on facts in evidence tending to show Epperson's awareness the car he sold Hamawi was stolen. No reference, even inferentially, was made to the fact Epperson did not testify in his own defense. There was no reference to Epperson's silence at trial as prohibited by *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], nor even any harmless, indirect reference as defined by *People* v. *Frausto* (1982) 135 Cal.App.3d 129, 146 [185 Cal.Rptr. 314]. In response to Epperson's argument that perhaps he sold two cars, the prosecutor argued Epperson had not referred to selling two different cars in his description of the transaction at the *civil* trial. The prosecutor's argument "the testimony of the officer and the testimony of the witnesses that there has been a VIN swap and that the defendant is in possession of that," plainly makes the point Epperson was in possession of the stolen car, not that he presently possessed any other evidence which his testimony in the criminal trial would have disclosed. There was no prosecutorial misconduct in the form of comment on Epperson's failure to testify.

## III

■ Epperson argues the court should have given *sua sponte* CALJIC instructions Nos. 2.70, 2.71, 2.71.5 and 2.72, and it was reversible error not to do so.

CALJIC No. 2.70 defines admissions and confessions, and advises that evidence of an oral admission by the defendant must be viewed with caution; CALJIC No. 2.71 is the same except limited to admissions; CALJIC No. 2.71.5 instructs on adoptive admissions by silence, or by making a false, evasive, or contradictory reply to an accusation; CALJIC No. 2.72 instructs there must be some proof of each element of the crime independent of any confession or admission and that identity of the person who committed the crime is not an element of the crime and may be established by an admission.

■ Addressing first CALJIC No. 2.71.5, there was no evidence of an adoptive admission. Nothing was said to Epperson which the People claim he adopted. The evidence was of Epperson's own words. CALJIC No. 2.71.5 was not raised by the evidence and was not required.

■ With regard to the necessity for the other instructions, we must understand the nature of the out-of-court statements of Epperson received in evidence. Paraphrasing, they are essentially, "I bought the wrecked car from Manning," "I fixed it up and changed the bumper," and "I sold the car to Hamawi."

The fact an out-of-court statement is an "admission of a party" and not made inadmissible by the hearsay rule pursuant to section 1220 does not necessarily mean the statement is an admission as defined in CALJIC No. 2.71: "a statement by a defendant which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence."

A statement is an admission for purposes of section 1220 if it was made by a party and is offered against him, without reference to what it tends to prove. "An admission is 'any statement by an accused relative to the offense charged' (*People* v. *Atchley* (1959) 53 Cal.2d 160, 170 . . .)." (*People* v. *Ford* (1964) 60 Cal.2d 772, 799 [36 Cal.Rptr. 620, 388 P.2d 892].) The statement, "I bought the wrecked car from Manning," tends to prove guilt because it explains where Epperson got the VIN number which was affixed to the stolen car, and because buying the wrecked car first is part of the standard "VIN swap." The statement, "I sold the car to Hamawi," tends to prove guilt because it admits he was the one who sold the car which turned out to have been stolen. Neither of these two statements added much to the trial. There was substantial, overwhelming and indisputable independent evidence that Epperson bought the wrecked car from Manning and later sold to Hamawi the car which turned out to have been stolen. There was no contrary evidence, and Epperson did not argue otherwise. The trial was on the issue of Epperson's knowledge the car he sold was stolen. Thus, the

admissions tending to establish guilt were not vitally important to the case so as to give rise to any *sua sponte* duty to give the cautionary instructions. (See *People* v. *Ford, supra,* 60 Cal.2d 772, 800.)

The statement, "I fixed it up and changed the bumper," is exculpatory rather than inculpatory when taken for its truth. The jury were not being asked to believe it, only that he said it, so instructions to view the statement with caution would be irrelevant as well as against Epperson's own interest. The fact he made that statement was not disputed by any evidence (nor could it be, having been said under oath in court before several witnesses) and its significance was it was contrary to the physical facts and circumstantial evidence of Epperson's knowledge the car was stolen.

There was undisputed evidence a car was stolen. There was undisputed evidence the stolen car was sold by Epperson to Hamawi. The only element of the crime in dispute was Epperson's knowledge, and the only statement of Epperson bearing on that issue was "I fixed it up and changed the bumper," and this statement the jury were being asked not to believe but to disbelieve. On the facts of this case, none of the instructions on admissions would have added to the jury's understanding. ■ Even if we were to conclude it was error not to give these instructions, it would not be reversible error since it is not reasonable to conclude on these facts a result more favorable to Epperson would have occurred had the instructions been given. (*People* v. *Brucker* (1983) 148 Cal.App.3d 230, 237 [195 Cal.Rptr. 808]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The error, if any, was harmless.

## IV

■ Epperson contends the enhancements for the two prior felony convictions he admitted before trial must be stricken because both are subject to the five-year "washout" provision of Penal Code section 667.5, subdivision (b).[2] As to the priors, the information alleged, among other things, he had served prison terms of one year or more for each felony and he had not remained free of prison custody and the commission of a felony for more than five years, "within the meaning of Penal Code section 667.5(b)." The first conviction was September 29, 1970, and according to the probation

---

[2]Penal Code section 667.5, subdivision (b), provides: "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction."

report he was sentenced to five years in prison and granted probation November 6, 1972. The second conviction occurred September 25, 1973, and according to the probation report he was committed to prison and paroled August 8, 1975. The present offense occurred April 26, 1982. The People concede at oral argument that Epperson did remain free of prison custody and the commission of a felony for more than five years.

The proceedings in which Epperson admitted the prior convictions occurred as follows:

"THE COURT: Mr. Epperson, your attorney has indicated you wish to admit that you have previously suffered two prior convictions as felonies.

"The first alleged prior alleges that you were convicted on or about September 29, 1970, in the United States District Court for the Southern District of California, convicted of a felony, to wit, transporting a stolen motor vehicle in foreign commerce, in violation of 18 United States Code 2312, case No. 8877, which if committed in California is a felony punishable by imprisonment in the state prison, and you served a separate prison term of one year or more for such offense and you have not remained free of prison custody and free of the commission of an offense resulting in a felony conviction for five years subsequent to your release from prison for the prior felony within the meaning of Penal Code section 667.5(b). Do you wish to admit you did suffer that conviction?

"THE DEFENDANT: I admit."

The court then accepted waivers of constitutional rights attending a trial on the issue of the truth of the priors, the *Boykin-Tahl* rights, and the following colloquy occurred:

"THE COURT: Okay. Do you wish to admit this prior conviction of a felony, knowing that you give up—that you have all those rights and give them up by admitting?

"THE DEFENDANT: And I admit.

"THE COURT: And you do give up all those rights I mentioned, the right to a jury trial, the right to separate trials, the right to confront and cross-examine witnesses, your right against self-incrimination, your right to a speedy and public trial; do you now give up those rights?

"THE DEFENDANT: Yeah.

"THE COURT: And do you admit it?

"THE DEFENDANT: Yeah."

The court then informed Epperson of the one-year additional term consequence of his admission of each prior conviction if he were found guilty of the underlying charge, and Epperson acknowledged his understanding of these consequences.

On the second prior conviction, the following proceedings occurred:

"THE COURT: Now, as for the second prior, it is alleged that you were, on or about September 25, 1973, in the Superior Court of the State of California for the County of Los Angeles, convicted of a felony, to wit, fraudulent use of credit card, in violation of Penal Code section 484(g), case No. A-433079, and served a separate prison term for such offense and haven't remained free from prison custody and free of the commission of an offense resulting in a felony conviction for five years subsequent to his release from prison for the above-said felony within the meaning of Penal Code section 667.5(b). [¶] Under that you have the same rights to a jury trial, your right to confront and cross-examine the witnesses against you, your right to a separate trial on this issue, your privilege against self-incrimination, your right to a speedy and public trial as to that issue; do you understand that?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: And understanding that do you wish to waive those rights and admit that prior conviction in Los Angeles in 1973?

"THE DEFENDANT: Yes.

"THE COURT: And do you now give up all of those rights?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: All right. And do you admit or deny that prior conviction in Los Angeles in 1973?

"THE DEFENDANT: I admit."

The record in this pre-Proposition 8 case discloses Epperson admitted only the fact of each of his convictions and *not* the existence of the requisite prison term served and the nonexistence of the five-year "washout" period. Epperson's affirmative responses to the trial court's questions referring to "this prior conviction of a felony" and "that prior conviction in Los An-

geles" do not represent admissions to all the allegations, including the five-year "washout" allegations, pertaining to the Penal Code section 667.5, subdivision (b), priors charged in the information. Thus, we cannot view Epperson's admissions of the "convictions" as including admissions of all the necessary elements of the enhancements alleged under Penal Code section 667.5, subdivision (b). The People have conceded at oral argument that Epperson satisfied the five-year "washout" requirement and we should modify his sentence by striking the two years added for the priors. We do so.

Because of the disposition we have made with respect to the two enhancements, we need not discuss Epperson's contentions regarding the status of the federal conviction as a prior conviction, nor his contentions regarding his counsel's failure to challenge the enhancements or the alleged dual use of the priors.

## V

Epperson argues "failure to file a statement in mitigation constitutes incompetence," citing *People* v. *Kozel* (1982) 133 Cal.App.3d 507 [184 Cal.Rptr. 208]. This case not only does not hold what Epperson says, it states the opposite, at pages 534 to 535: "Appellant asserts that his trial counsel's failure to file a statement in mitigation is evidence of inadequate representation. The record does not support him on this point. His counsel argued the facts, particularly the mitigating factor of appellant's mental condition, and urged the court to impose the lower term. The probation report disclosed some mitigating circumstances. Whether there were others we do not know. The record does not establish that a statement in mitigation would have resulted in a shorter sentence or that defense counsel was less than diligent in the hearing."

Here, trial counsel urged the court to impose the midterm, argued that Epperson was a "sick man" as a result of surgeries, and argued for a CRC evaluation for narcotic addiction. All of Epperson's arguments on ineffective assistance of counsel are without merit, and no shorter sentence than Epperson received would have resulted on the facts of this case.

The judgment is modified by striking the two 1-year enhancements. The trial court shall cause to be prepared an abstract of judgment reflecting the

modification and shall forward it to the Department of Corrections. In all other respects, the judgment is affirmed.

Work, Acting P. J., and Adams, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.