Filed 4/3/13  P. v. Burquez CA2/6

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TRINIDAD CRUZ BURQUEZ, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B237506<br>(Super. Ct. No. 2010042529)<br>(Ventura County) |

A jury found Trinidad Cruz Burquez, Jr., guilty of corporal injury to a cohabitant.  (Pen. Code, § 273.5, subd. (a).)  Burquez admitted he suffered a previous conviction for violating section 245, subdivision (a) within the meaning of sections 667, subdivisions (c)(1) and (e)(1); and 1170.12, subdivisions (a)(1) and (c)(1), the three strikes law.[1]  We affirm.

### FACTS

Burquez and Teresa Cummings had a turbulent six-year relationship.  On October 10, 2010, they were living together in the same apartment.  They were drinking at the beach, when they started to argue.  Burquez hit Cummings with a newspaper.  They

---

[1] All statutory references are to the Penal Code unless otherwise specified.

rode their bicycles home, and continued the argument in their apartment. Burquez left the apartment, and rode to a park. Cummings followed him to the park.

Oxnard Police Officer Victor Boswell went to the park in response to a 911 call. Cummings told Boswell that she confronted Burquez outside a park restroom. Burquez punched Cummings in the eye with a closed fist. Cummings also had bruises on her arm. She said Burquez caused the bruises about a week prior to the incident. She said she did not call the police at that time because she was afraid of Burquez.

Cummings recanted at trial. Cummings testified that when she arrived at the park, she began talking to a friend, Mario Rodriguez. Burquez overheard Rodriguez ask Cummings if she wanted to go out with him. Burquez and Rodriguez began to yell and push each other. Cummings stepped between the men to break up the argument and Rodriguez hit her in the left eye. Rodriguez left the park. Burquez rode after him while Cummings called 911.

*Other acts of domestic violence*

In April 2006, Cummings and Burquez got into an argument at the beach. Burquez grabbed her, causing bruises that covered her arm. He also gave her two black eyes and a sprained or fractured finger. Cummings said she injured her finger when Burquez pushed her off a bench. He also hit her in the face with a video game, grabbed her by the arms, and hit her head against a "posterboard."

Burquez pled guilty to a violation of section 273.5, subdivision (a). Cummings filed a request for dismissal stating this was the first time Burquez assaulted her.

On February 4, 2011, Cummings came home and asked for grocery money. Burquez pushed her twice and hit her chest. Cummings called the police but no charges were filed.

On June 23, 2011, Burquez returned home late at night. Cummings asked him where he had been. Burquez became upset, called her names and hit her on the left eye. Cummings was bleeding. She went to tell her landlord. Cummings called the

2

police.  A police officer saw a laceration and contusion to Cummings's left eye.  No charges were filed.

## DEFENSE

Burquez testified on his own behalf.  He denied he hit Cummings on October 10, 2010.  He admitted, however, that they had their "tussles" in the past.  He said that he and Rodriguez got into a fight.  Rodriguez hit Cummings when she stepped between them.  Burquez said he left the scene on his bicycle to chase Rodriguez.  He could not catch him so he went home and called Cummings.

Burquez also testified about the other acts of domestic violence.

The April 2006, incident occurred when he told Cummings that he wanted to end their relationship.  Cummings became upset and tried to tackle him as he walked away.  They hit each other.  The next day, the police arrested Burquez.  He pled guilty in the hope his relationship with Cummings would improve.

The February 2011 incident occurred when the two began to argue about groceries.  Burquez tried to leave and Cummings grabbed him.  He left on his bicycle.  He denied hitting Cummings that day.

The June 2011 incident occurred when the two were arguing in their apartment.  Burquez left on his bicycle.  Cummings pleaded with him not to leave her.  She got on her bicycle and yelled for him to stop.  When he stopped, she rammed into him on her bicycle at a high rate of speed.  The two fell over.  Burquez denied hitting Cummings that day.  He said she suffered her injuries when she fell over on her bicycle.

## DISCUSSION

### I.

Burquez contends the trial court erred in admitting evidence of other acts of domestic violence.

Generally, evidence of a person's prior bad acts is inadmissible to show the person's disposition to commit such act.  (Evid. Code, § 1101, subd. (a).)  Evidence Code section 1109, subdivision (a)(1) provides an exception to the general rule.  Where the defendant in a criminal action is accused of domestic violence, other acts of domestic

3

violence are admissible to show the defendant's disposition to commit such acts. (*Ibid.*) The admission of such evidence is, however, subject to an exercise of the court's discretion under Evidence Code section 352. (*Id.*, § 1109, subd. (a)(1).) Thus the only question here is whether the trial court abused its discretion under Evidence Code section 352.

Evidence Code section 352 provides that the trial court has the discretion to exclude relevant evidence where its probative value is substantially outweighed by the probability that its admission will necessitate an undue consumption of time, create a substantial danger of undue prejudice, of confusing the issues or of misleading the jury.

Burquez argues the evidence required an undue consumption of time. He claims he had to defend himself in three "mini-trials." But the evidence portion of the trial takes fewer than 251 pages of reporter's transcript. There was not a great deal of time consumed in the entire trial. Burquez was the only witness for the defense. He simply gave his own version of the three alleged prior acts of violence. There was not an undue consumption of time.

Nor was there a substantial danger of confusing the issues. The trial court instructed the jury on the limited purpose for which the prior acts of violence could be considered. We presume the jurors followed the instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 622.)

Nor was the probative value of the evidence outweighed by a substantial danger of undue prejudice. The evidence was highly probative, particularly because the victim recanted her accusation. All prior acts were against the same victim and relatively recent. Some of the incidents may arguably be worse than the charged offense, but not so much worse as to create a substantial danger of undue prejudice.

The trial court did not abuse its discretion in admitting evidence of prior acts of domestic violence.

## II.

Burquez contends the prosecutor committed misconduct during closing argument.

4

During closing argument, the prosecutor stated:

"[Prosecutor]: Most importantly, why are you even allowed to hear those 911 statements? The [L]egislature has determined that those 911 statements, otherwise known as 'spontaneous statements,' are 'inherently trustworthy,' and they are inherently trustworthy because the people who make them are still acting under the stress of the event. In other words, they don't have time to fabricate this. It's such an immediate response from the person, there is no time for them to formulate any kind of lie, change it in any way. This is a gut reaction, a response -- an immediate survival response, an instinct, if you will. And it is your best evidence about what happened that day. The judge made the determination that you were allowed to hear this evidence because it is inherently trustworthy.

"[Defense Counsel]: Your Honor, I'm going to object. That's inappropriate argument; move to strike.

THE COURT: Well, none of my rulings are to be interpreted by the jury as an indication of what I think about the evidence; otherwise, you may proceed."

It is misconduct for a prosecutor to misstate the law. (*People v. Mendoza* (2007) 42 Cal.4th 686, 702.) Here the prosecutor told the jury that the Legislature and the trial judge consider the statements Cummings made during the 911 call to be "inherently trustworthy." The clear implication is that the Legislature and the trial judge are endorsing the credibility of Cummings's 911 call. That is not the law.

In allowing a spontaneous statement to be admitted into evidence as an exception to the hearsay rule, the Legislature is not declaring such statements to be inherently trustworthy. It is only stating that spontaneous statements carry a sufficient indicia of credibility to be considered by the trier of fact. Similarly, in allowing a spontaneous statement into evidence, the trial judge is not vouching for its credibility. The trial judge has no power to exclude such a statement simply because he does not believe it.

It is egregious for the prosecution to suggest the trial judge found Cummings's statements to be inherently trustworthy. The jury could believe that the trial

5

judge, unlike the Legislature, had Cummings's particular statements in mind when he found them to be admissible

Fortunately, the trial court instructed the jury that its rulings did not indicate what it thought of the evidence. The trial court, however, gave no instruction about the Legislature.

Nevertheless, the misconduct was harmless. The trial court instructed the jury that its rulings did not indicate what it thought of the evidence. It further instructed that the jury is the sole judge of the credibility of witnesses. The jury would not believe that the Legislature had determined the credibility of the particular recording of the 911 call. The jury heard the recording of the 911 call and could determine the credibility for itself. Finally, the offending comment was brief and only a small part of the prosecutor's argument. The prosecutor's main point was that Cummings's 911 call was consistent with what she told the police at the scene. In both cases she identified Burquez as the person who hit her and never mentioned Rodriguez.

The misconduct here was not so pervasive or egregious as to implicate the federal Constitution. (*People v. Hill* (1998) 17 Cal.4th 800, 819.) Thus we apply the harmless standard for misconduct under state law. (*Ibid.*) There is no reasonable probability Burquez would have obtained a more favorable result in the absence of the prosecutor's misconduct. (See *People v. Bolton* (1979) 23 Cal.3d 208, 214.)

III.

Burquez contends his sentence must be reversed because there is no substantial evidence that his 1982 conviction for violating section 245, subdivision (a), assault with a deadly weapon, qualifies as a strike.

Burquez points out that in order for his prior conviction to qualify as a strike, he must have personally used a deadly or dangerous weapon or have personally inflicted great bodily harm. He argues that neither his admissions nor any other evidence in the record supports such a finding. He claims he only admitted to the fact of his prior conviction.

6

The information alleges that in 1982, Burquez was convicted of violating section 245, subdivision (a) "within the meaning of Penal Code section 667(c)(1), 667(e)(1), 1170.12(a)(1), and 1170.12(c)(1)."

Burquez executed a written waiver form in which he admitted to having suffered a prior conviction for violating section 245, subdivision (a), "as alleged in the information." Thus he admitted that his prior conviction was for a qualifying offense.

Burquez's reliance on *People v. Rodriguez* (1998) 17 Cal.4th 253, 261, is misplaced. There the defendant did not admit the prior conviction allegation, but only challenged the sufficiency of the proof submitted.

Burquez's reliance on *People v. Epperson* (1985) 168 Cal.App.3d 856, 863-865, is also misplaced. There the trial court stated the elements of a section 667, subdivision (b) enhancement, but only asked the defendant if he admitted he suffered a prior conviction. The defendant in *Epperson* did not admit he suffered a prior conviction as alleged in the information.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

7

Kevin G. DeNoce, Judge

Superior Court County of Ventura

_____

Melcher, Melcher & Melcher and William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Tasha G. Timbadia, Deputy Attorney General, for Plaintiff and Respondent.