Filed 9/18/13  P. v. Moore CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056081 |
| v. | (Super.Ct.No. RIF10003079) |
| DALE BRUCE MOORE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios J. Hernandez, Judge.  Affirmed.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Dale Bruce Moore appeals after he was found guilty by a jury of two charges of failing to register as a sex offender.  At a bifurcated proceeding, he

1

admitted allegations that he had been convicted of strike priors and had suffered prior prison terms.  He now complains that his sentence was improper because the evidence was insufficient to establish the elements of the enhancement allegations he admitted to the trial court.  We affirm.

## FACTS AND PROCEDURAL HISTORY

As of 1985, defendant was required by certain convictions to register as a sex offender within the State of California.  By May 2003, defendant was living in a transient camp under a bridge in the riverbed of the Santa Ana River.  Many transients lived along the riverbed near the encampment where defendant was staying.  Part of the riverbed fell into the jurisdiction of the City of Jurupa Valley, while part was within the jurisdiction of the City of Riverside.  Some of the transients in the camp registered at the Jurupa Valley police station.  Defendant had always registered in Riverside County, and had never registered in Jurupa Valley.  However, defendant had registered regularly; he updated his registration 17 times altogether, and had registered in Riverside County nine times.  He had registered in the City of Riverside seven times.

In Riverside County, registered sex offenders were also given and required to wear a global positioning system (GPS) tracking device.  The purpose of the tracking device was to ensure that a registered sex offender did not come within 2,000 feet of a school or park.  In defendant's case, his tracking device was attached to his ankle.  It was not removable, and had to be recharged twice a day.

In 2009, defendant registered in Riverside.  Later that year, he violated his parole and spent a period of time incarcerated.  When defendant was released, on January 10,

2010, he reported to his parole officer. The parole officer informed defendant once more of the registration requirements, including the requirement to register within five days of his release on parole. Defendant told his parole officer that he was registering in an unincorporated area of Riverside and staying at the Santa Ana riverbed. Defendant was again fitted with a GPS tracking device on his ankle, and told about the regulations for wearing and recharging the device. Because defendant was not living where there was a ready source of electricity, he could recharge his device at the local police station.

Defendant made two appointments with the registration department in Riverside, for January 13 and January 15, 2010, but he failed to keep either appointment. Defendant's parole officer attempted to get into contact with defendant, including sending signals to defendant's GPS tracking device. The signals would cause the device to vibrate, which required the wearer to immediately get in touch with his parole agent. Defendant did not respond to the signals, however, and did not otherwise contact his parole agent. Instead, the parole agent received a notification that the tracking device was no longer charged. The last tracking information on defendant's device showed that defendant had been in the riverbed area.

At the time, January 19, 2010, it had been raining heavily, so defendant's parole agent allowed some leeway, expecting defendant to keep his regular parole appointment on January 20. Defendant did not appear for his appointment, however, and a warrant was issued for his arrest. The parole agent went to the riverbed area to look for defendant but was unable to find him. Defendant never reported to his parole agent thereafter.

About two months later, in March 2010, a different parole agent saw defendant riding a bicycle in Rubidoux. He left a message for defendant's parole agent, advising him that he had seen defendant in the community. When the second agent learned of the arrest warrant for defendant, he went back to try to locate defendant but was unsuccessful. A week later, the second agent again saw defendant riding a bicycle in the area, but traffic impeded his efforts to make contact with defendant. A few days later, a deputy sheriff responded to a call about transients in the parking lot of a shopping center; the parking lot was about one-quarter to one-half mile from the Santa Ana riverbed. The deputy found defendant rummaging through trash bins. Defendant gave a false name and birth date, and said he had no identification. A records check returned no person with the name and birth date defendant had given. Defendant insisted that the false name was his name, and denied having a criminal record. He also said that his girlfriend had his identification cards, but he could not name his girlfriend. A search of defendant's backpack turned up a check cashing card in defendant's true name; this time, the record check ran by dispatch returned the information that defendant was subject to an arrest warrant. Defendant was taken into custody and his true identity verified.

In September 2010, the Riverside County District Attorney filed an information alleging one count of failure to register as a sex offender (count 1), one count of failing to register upon release from incarceration (count 2), and one count of grand theft (cutting off and disposing of state property, i.e., the GPS ankle device) (count 3). The information also alleged six prison term prior offenses (2003 conviction of assault with a deadly weapon, 1996 conviction of theft with a prior, 1993 conviction of felony

4

recklessly evading a police officer, 1990 conviction of possession of a controlled substance, 1987 conviction of burglary, and 1978 conviction of kidnapping), and four strike priors (2003 conviction of assault with a deadly weapon, 1987 conviction of burglary, 1978 conviction of kidnapping, and 1978 conviction of rape).

In January 2011, defendant moved to represent himself; the trial court granted this motion. The trial court heard and denied defendant's motion to dismiss the information in April 2011. By August 2011, defendant decided that the case was more complex than he had initially realized, and he requested appointed counsel. The court appointed the public defender to represent him.

Defense counsel asked the trial court to dismiss the strike prior allegations in this case. The court declined to do so, but its ruling was without prejudice to reconsidering the matter later.

The matter proceeded to jury trial. Before opening statements, the People dismissed the grand theft charge in the interest of justice. The jury returned verdicts convicting defendant of both failure-to-register charges. Defendant requested a court trial on the prior offense allegations, and the jury was excused. The People presented exhibit evidence of defendant's prior convictions. The minutes record that the court admitted the documents into evidence. Defendant then admitted all six prison term prior offenses and all four strike priors.

At the sentencing hearing, defense counsel made an oral request for the court to exercise its discretion under *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, to dismiss one or more of defendant's strike priors. The court declined to dismiss any of the

strike priors. The court imposed an indeterminate sentence of 25 years to life on count 1, and imposed an additional sentence of 25 years to life on count 2, but stayed that term under Penal Code section 654. The court imposed six one-year terms on the six prison term prior enhancements, to run consecutively to the sentence on count 1.

Defendant filed a timely notice of appeal.

ANALYSIS

I. Contentions and Standard of Review

Defendant contends that the trial record below does not show that the court admitted the documentary papers concerning his prior offenses into evidence. That is, although the clerk's minutes note that the documentary exhibits were admitted into evidence, the reporter's transcript of the proceedings does not show either that the People requested that the documents be admitted or that the trial court made any such ruling. The reporter's transcript indicates, rather, that the court may have treated defendant's admissions of the prior convictions as a substitute for documentary proof. Most especially, defendant points out that the court considered the record of defendant's out-of-state convictions (rape and kidnapping) to be rather "sparse," failing to indicate precisely what Washington state statutes were involved, and how they were shown to be the equivalent of California qualifying strike offenses. Defendant urges that the record fails to show that any amplification of the record was made to satisfy the court's reservations about the out-of-state convictions.

Under these circumstances, defendant contends, first, that his "bare admission" of the prior offenses was insufficient to prove the prior offense allegations because the

6

supporting documents were not admitted into evidence, and, second, even if the trial court did admit and consider the documents, the evidence was still insufficient to support all the prior allegations.

Defendant's contentions are claims of insufficiency of the evidence. The claim of insufficiency of the evidence to support an enhancement is the same as in other contexts: "[W]e review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

## II. Proof of Sentence Enhancements

As a matter of due process, the People must prove each element of a sentence enhancement beyond a reasonable doubt. (*People v. Tenner* (1993) 6 Cal.4th 559, 566.) Some prior convictions under a specified statute necessarily qualify as a serious felony. Where, however, the fact itself of the conviction does not show that the conviction constituted a serious felony conviction, other admissible evidence from the entire record of the conviction may be considered, in order to resolve the issue. (*People v. Miles*

7

(2008) 43 Cal.4th 1074, 1082 (*Miles*).) "This rule applies equally to California convictions and to those from foreign jurisdictions." (*Ibid*.) Such evidence may include certified documents from the Penal Code section 969b packet. "A court document, prepared contemporaneously with the conviction, as part of the record thereof, by a public officer charged with that duty, and describing the nature of the prior conviction for official purposes, is relevant and admissible on this issue." (*Miles*, *supra*, 43 Cal.4th 1074, 1082.) If, however, "the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense." (*Id*. at p. 1083.) "In such a case, if the serious felony nature of the prior conviction depends upon the particular conduct that gave rise to the conviction, the record is insufficient to establish that a serious felony conviction occurred. [¶] (4) On the other hand, the trier of fact may draw *reasonable inferences* from the record presented. Absent rebuttal evidence, the trier of fact may presume that an official government document, prepared contemporaneously as part of the judgment record and describing the prior conviction, is truthful and accurate. Unless rebutted, such a document, standing alone, is sufficient evidence of the facts it recites about the nature and circumstances of the prior conviction." (*Ibid*.)

Inquiry into the facts underlying a prior conviction, to determine whether or not the guilty plea admitted the elements of a serious or violent offense "is limited to the terms of the charging document, to the terms of the plea agreement . . . or to some comparable judicial record of this information." (*Shepard v. United States* (2005) 544

8

U.S. 13, 26 [128 S.Ct. 1254, 161 L.Ed.2d 205].) In California, the nature of the prior conviction may be established from the charging documents, the court's minutes, and the plea form, which are official records admissible to establish the foundational facts of the prior conviction. (See, e.g., *People v. Henley* (1999) 72 Cal.App.4th 555, 560.)

III. The Documentary Proof of the Convictions Was Properly Considered as Evidence by the Court

We reject defendant's contention that the documentary evidence contained in the record cannot be considered, on the alleged ground that there was no express statement that the documents had been admitted into evidence.

After taking the verdicts and dismissing the jurors, the court took up the matter of trial on the priors. The court asked the prosecutor, "Do you have your [Pen. Code, § 969b] package?" The prosecutor had inadvertently left the documents at her office. The court took a short recess to allow them to be retrieved. When proceedings reconvened, the court announced the appearances of the parties for the record, and noted, "I just need to glance over the [Pen. Code, § 969b] package. [¶] Again, everybody. I've had a quick glance and looked at it. Everything seems to be in order."

The packet, consisting of Exhibits 6 through 15, included documents for each of defendant's prior offense convictions. The packet documents for Exhibits 6 through 13 are included in the clerk's transcript and the supplemental clerk's transcript on appeal; the clerk's label on each of these exhibits is marked showing both that the exhibits were marked for identification, and that they were admitted into evidence. Although defendant complains that the reporter's transcript does not show explicitly that the documents were

9

admitted into evidence, neither does it show, for example, that they were marked for identification. The pause in the proceedings would, however, account for the failure to record the identification and admission of the documents into evidence. The markings on each exhibit in the record clearly indicate that both procedures were performed. There could be no doubt that the prosecutor proffered the documents as evidence, with the intent that the court would review and rely on them, as, in fact, the court did. Generally, "[i]t is presumed that official duty has been regularly performed." (Evid. Code, § 664.) In accordance with this principle, we conclude that the exhibits were admitted into evidence and properly considered by the trial court.

IV. <u>The Evidence Was Sufficient to Show that Defendant Had at Least Two Prior Strike</u>

<u>Convictions</u>

Defendant's conviction in 2003 for assault with a deadly weapon qualified as a strike prior. Penal Code section 1192.7, subdivision (c)(31), lists "assault with a deadly weapon . . . in violation of Section 245," as a serious (strike) felony. When defendant admitted his priors in the instant case, the trial court stated: "And then there's your strikes. The first one is September 24th, 2003, a violation of 245(a)(1), assault with a deadly weapon. And do you admit - - and you were convicted. Do you admit or deny?" Defendant stated: "Admit."

Penal Code section 245, subdivisions (a)(1) and (a)(4), provide that it is a felony to "commit[] an assault upon the person of another with a deadly weapon or instrument other than a firearm" or "by any means of force likely to produce great bodily injury." It therefore provides two distinct means of violating the provision: *either* committing an

10

assault with a deadly weapon other than a firearm, *or* committing an assault by means of force likely to produce great bodily injury. As already noted, Penal Code section 1192.7, subdivision (c)(31), defines "assault with a deadly weapon" as a serious (strike) felony, but committing an assault by any force likely to produce great bodily injury (which might, e.g., be accomplished without the use of a weapon) does not qualify as a strike.

Defendant argues that neither Penal Code section 1192.7 (serious felony strikes) nor Penal Code section 667.5 (violent felony strikes) "separately lists" the crime of "assault with a deadly weapon other than a firearm" as a qualifying strike offense. Defendant argues that the only way to bring the offense within the definition of a strike offense is proof that the offender personally used a dangerous or deadly weapon. (Pen. Code, § 1192.7, subd. (c)(23).) A defendant may be convicted of assault with a deadly weapon, other than a firearm, either by personally using the weapon, or as an aider and abettor. (See *People v. Williams* (1990) 222 Cal.App.3d 911, 914-915.) When defendant admitted his conviction of assault with a deadly weapon under Penal Code section 245, subdivision (a)(1), he did not admit personal use of the weapon, nor did he admit the nature of the conviction as either a serious or violent felony. Defendant therefore urges that his admission alone did not provide sufficient proof that the prior conviction was a strike.

On March 7, 2000, the electorate adopted Proposition 21 (Ballot Pamp., Primary Elect. (Mar. 7, 2000), text of Prop. 21, § 17, pp. 124-125), which deleted personal use as a necessary criterion to establish that an assault with a deadly weapon or firearm was a serious felony (strike). (See *People v. Luna* (2003) 113 Cal.App.4th 395, 398 (*Luna*).)

11

Penal Code section 1192.7, subdivision (c)(31), now provides that any "assault with a deadly weapon [or] firearm . . . in violation of Section 245" is a serious felony (strike), without regard to whether the conviction was as a perpetrator or as an aider and abettor.

Defendant urges this court to reject *Luna* on the ground that it partially renders other subdivisions of Penal Code section 1192.7 surplusage.[1] (See, e.g., Pen. Code, § 1192.7, subds. (c)(11) [assault with a deadly weapon on a peace officer], (c)(13) [assault with a deadly weapon by an inmate], (c)(32) [assault with a deadly weapon against a public transit employee].) However, *Luna* follows the plain meaning of subdivision (c)(31). That Penal Code section 1192.7, subdivision (c)(31), may have some overlap with other subdivisions is no reason to disregard its plain language.

In *Delgado*, *supra*, 43 Cal.4th 1059, the California Supreme Court held that the notation on the abstract of judgment, "245(A)(1)" as "Asslt w DWpn" was sufficient to support a finding that the conviction was a serious felony. (*Id*. at p. 1065.) That is, the notation on the abstract of judgment was a "contemporaneous, statutorily sanctioned, officially prepared clerical *record* of the conviction and sentence," and as such was sufficient to show that the conviction proceeded under the deadly weapon prong of Penal Code section 245, subdivision (a)(1), and not the great bodily injury prong. The

---

[1] *Luna*, *supra*, 113 Cal.App.4th 395 was partially overruled in *People v. Delgado* (2008) 43 Cal.4th 1059 (*Delgado*). To the extent that *Luna* suggested that both prongs of Penal Code section 245, subdivision (a)(1)—assault with a deadly weapon other than a firearm, on the one hand, or assault by use of force likely to cause great bodily injury, on the other—would now qualify as a serious felony (strike), the Supreme Court rejected it as to the great bodily injury prong. (*Delgado, supra*, 43 Cal.4th at p. 1070, fn. 4.)

12

presumption of regularity in the clerk's recording of this description of the offense on the abstract of judgment, unrebutted by any contrary evidence, allowed the trier of fact to conclude beyond a reasonable doubt that the conviction for assault with a deadly weapon was a serious felony conviction. (*Delgado*, *supra*, 43 Cal.4th 1059, 1070.)

The abstract of judgment for defendant's 2003 assault with a deadly weapon conviction indicated that he had been convicted of "245(A)(1)," described as "Assault w/ weapon." The abstract identified only one of the two prongs as the applicable ground for defendant's conviction, and it so identified the prong that meets the definition of a serious felony (strike). In addition, the record contains defendant's plea form for this offense, on which defendant was expressly advised, "This will count as a 'strike' in any future cases." These records, properly considered by the trial court below, together with the presumption that duty was properly performed, support the inference that defendant was convicted of a qualifying strike prior with respect to his 2003 assault with a deadly weapon conviction.

Defendant's 1987 conviction for first degree burglary also qualified as a strike. Penal Code section 1192.7, subdivision (c)(18), provides that any conviction of burglary in the first degree is a serious felony. The court asked defendant about his "[s]econd strike," of "November 9th, 1987, County of Riverside, burglary—that would be burglary in the first degree, as a felony and as a strike. Do you admit or deny that?" Defendant stated, "Admit." Defendant's oral admission on the record included the admission that the burglary was of the first degree. The record contains two abstracts of judgment relating to this 1987 burglary conviction, including notations that the offense is

13

"BURGLARY 1st deg" or "BURGLARY, 1st deg inhabited bldg." The evidence in the record was clearly sufficient to sustain the trial court's determination that the 1987 burglary conviction was a strike prior. (See *People v. Myers* (2007) 148 Cal.App.4th 546, 554 [Trial court may consider the entire record on the prior conviction to determine whether it satisfies the elements of a serious felony.].)

Defendant's remaining alleged strike priors were for convictions in the State of Washington in 1978, for first degree rape and first degree kidnapping. At the time of taking the admissions, the court inquired of defendant: "Third strike. That is November 20th, 1978, State of Washington, County of Spokane, convicted of kidnapping, which in California code would be 207. . . . And that was a felony. To that, do you admit or deny?" Defendant answered, "Admit." The court continued, "A fourth strike. November 20th, 1978, State of Washington, County of Spokane, convicted of the crime of rape, which in California would be 261, but they have some other name for it in Spokane, as a felony. Admit or deny?" Defendant replied, "Admit."

Defendant admitted to suffering two out-of-state felony convictions, for kidnapping and rape, and apparently also admitted that the convictions were equivalent to the California offenses identified in Penal Code sections 207 (kidnapping) and 261 (rape). Both these California violations would qualify as strikes. (See Pen. Code, § 1192.7, subds. (c)(3) & (c)(20).)

14

The Washington rape statute, Washington Revised Code Annotated, section 9A.44.040,[2] provides that a person is guilty of rape in the first degree "when such person engages in sexual intercourse with another person by forcible compulsion . . . ." This provision meets the elements of the California rape statute, Penal Code section 261, subdivision (a)(2), defining rape as "(a) . . . an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, . . . [¶] (2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." The evidence before the court as to the nature of defendant's Washington rape conviction was sufficient to find that it constituted a qualifying strike.

Washington Revised Code Annotated section 9A.40.020 (2013)[3] defines first degree kidnapping as, "intentionally abduct[ing] another person with intent . . . [¶] (b) To facilitate commission of any felony or flight thereafter; or [¶] (c) To inflict bodily injury on him or her . . . ." The term "abduct" is defined in Washington Revised Code Annotated section 9A.40.010 as: "to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or

---

[2] Formerly Washington Revised Code Annotated section 9.79.170 (1977), recodified as section 9A.44.040 (1998). (See Wash. Adv. Legis. Serv. (1998), ch. 242, § 1 [eff. June 11, 1998].)

[3] Formerly Washington Revised Code Annotated, section 9A.40.020 (1975) and (2011). (See Wash. Adv. Legis. Serv. 1975 1st Ex. Sess., ch. 260, §9A.40.020 [amended 2011]; Wash. Adv. Legis. Serv., ch. 336, § 364.)

threatening to use deadly force." (Wash. Rev. Code Ann., § 9A.40.010 (1).)[4] The statutory elements of first degree kidnapping in the State of Washington do not appear to be identical to the elements of the California offense, inasmuch as no element of asportation appears to be required to be found guilty of first degree kidnapping in Washington. It is uncertain, in the absence of additional evidence concerning the nature of the Washington offense, whether the record establishes that the Washington kidnapping conviction constitutes a strike, although arguably defendant's admission was tantamount to an admission that the Washington kidnapping offense was equivalent to a strike offense in California. We find it unnecessary to resolve the matter definitively, however, because, in any case, at least three strike prior offenses were proven, which were sufficient to support imposition of a third-strike sentence in the instant case.

V. The Evidence Was Sufficient to Support True Findings for Six Prior Prison Term

Enhancements

Defendant argues that the evidence was insufficient to support true findings as to the six prior prison term enhancements, despite defendant's admissions, because the prosecution failed to establish that the prior prison terms were separate, or that the five-year "washout" period had not elapsed. We disagree.

Defendant relies on *People v. Epperson* (1985) 168 Cal.App.3d 856, 863, for the proposition that the admission of a prior prison term enhancement allegation must specifically admit that the prior prison terms occurred within the past five years in order

_____

[4] Formerly Washington Revised Code Annotated, section 9A.40.010. (See Wash. Adv. Legis. Serv. 2011, ch. 336, § 363 [effective July 22, 2011].)

16

to be valid. Defendant misapprehends the applicability of *Epperson*. There, it was plain on the record, and the People had conceded, that the defendant did remain free from prison custody, and the commission of a new felony, for more than five years. (*Id*. at pp. 863-864.) Under those circumstances, the bare admission that a conviction had occurred was not an admission with respect to the serving of a prison term, or the failure to remain free of a new conviction for a period of five years. Here, the court described the prior prison term enhancements, which defendant would be admitting, as, "you did time in state prison, and you never got out for more than five years, including recently." The court proceeded to inquire as to each of the prior prison term enhancements, each of which defendant admitted.[5] Defendant admitted to separate felony convictions in 2003

---

[5] The colloquy proceeded as follows:

"THE COURT: . . . [¶] Okay. We'll start with . . . the one-year priors. Is it true that on or about September 24th, 2003, in the County of Riverside, you were convicted of assault with a deadly weapon, a felony, and you did at least some time in state prison? Do you admit or deny?

"THE DEFENDANT: Admit.

"THE COURT: Second prior. August 30th, 1996, County of Riverside, convicted of 666, petty theft with a prior, and you did at least some time in state prison. Admit or deny?

"THE DEFENDANT: Admit.

"THE COURT: Okay. Third prior. April 1st, 1993, County of Riverside, convicted of the crime of 2800.2 Vehicle Code, recklessly evading a police officer, a felony, and you did some time in state prison. Admit or deny?

"THE DEFENDANT: Admit.

"THE COURT: Fourth prior. January 23rd, 1990, County of Riverside, a violation of 11377(a) of the Health and Safety Code, a felony, possession of a controlled substance, you did some time in State [*sic*] prison. You admit or deny?

"THE DEFENDANT: Admit.

"THE COURT: Fifth prior offense. November 9th, 1987, County of Riverside, a crime of burglary, a 459 of the Penal Code, a felony, and did you [spend] some time in state prison. Is that admit or deny?

*[footnote continued on next page]*

17

(assault with a deadly weapon) (ADW), 1996 (petty theft with a prior), 1993 (recklessly evading an officer), 1990 (possession of controlled substance), 1987 (burglary), and 1978 (kidnapping). He directly admitted to serving a separate prison term for each offense. The trial court prefaced the taking of the admissions with the statement that each prior included the failure to remain free from prison custody for a period of five years.

The records before the court also showed that defendant was sentenced in Washington State in 1978 to a maximum term of 20 years for the kidnapping offense. With respect to the 1987 burglary conviction, defendant was sentenced to state prison in 1988 for a term of two years. Defendant was committed to state prison in 1992 for the possession of a controlled substance for a term of one year four months. In 1993, he was committed to prison on the evading arrest charge, for a concurrent term of three years. Defendant was committed to prison for the petty-theft-with-a-prior offense for four years, in 1996. He was committed to prison in 2003, for the assault with a deadly weapon, for a term of six years.

The California Department of Corrections and Rehabilitation's (CDCR) record of defendant's prison service indicated he was received in state prison in January 1988, in connection with case No. CR-81652, the first degree burglary (fifth prison term prior),

*[footnote continued from previous page]*
    "THE DEFENDANT: Admit.
    "THE COURT: And sixth prior. November 20th, 1978, state [*sic*] of Washington, County of Spokane, convicted of the crime of kidnapping, a violation of 207 of the California Penal Code - - which they don't use exactly the same numbers. I don't know what numbers they use, but it's the equivalent of 207 in California, and it's a felony. And do you admit or deny?
    "THE DEFENDANT: Admit."

and paroled to Moreno Valley in October 1988. Defendant's parole was suspended in January 1989, and he was re-released in March 1989. Defendant was received back into prison in April 1989 and re-released in July 1989. Defendant was returned to custody in May 1990. He was paroled again in August 1990. Defendant was returned to custody in October 1991. He was subject to an intake audit in March 1992, and ultimately discharged on his prior term, but retained in case No. CR-41938 (possession of a controlled substance, fourth prison term prior).

Defendant appears to have been paroled on the controlled substance offense in August 1992. The parole audit note of that date recorded that a restitution fine of $200 was imposed as to the controlled substance offense.

Another file audit in April 1993 noted the imposition of a $1,000 fine in case No. 47873, a conviction of vehicle theft on the same date and occasion as the evading-an-officer case. Defendant was received into Soledad state prison in July 1993. Defendant's parole had been revoked in April 1993, and he was apparently discharged on case No. CR-41938 (controlled substance offense), but retained in case Nos. CR-47873 (vehicle theft) and CR-48136 (evading an officer, third prison term prior). Defendant was paroled in November 1994, and appears to have been discharged from parole by operation of law as of December 1995.

In September 1996, defendant was received at Calipatria State Prison in connection with case No. CR-69435, petty theft with a prior (second prison term prior). He was paroled in August 1999, but his parole was suspended and he was returned to prison in March 2000. Defendant was paroled again in September 2000, and again

19

suspended a month later in October 2000. He was released on parole yet again in March 2001, and September 2001, but a hold was placed on him in February 2002, when he was arrested. He spent 300 days in custody on that revocation, until he was paroled in December 2002. Defendant did not long remain out of custody, however, as he suffered a revocation in January 2003, an arrest and reinstatement in May 2003, and a return to custody in July 2003.

Defendant was processed for intake at a state prison facility in connection with case No. RIF110285 (assault with a deadly weapon, first prison term prior) in October 2003. Defendant was discharged in case No. CR-69435 as of January 2004, but he was retained on case No. RIF110285 in July 2004. CDCR calculated defendant's parole release date in February 2008, with an expected release date in April 2008.

Defendant was in fact released on parole in April 2008, but was returned to prison for suspensions or revocations several times in 2009 and 2010. The instant case was filed in July 2010.

The records of defendant's prison custody clearly show that he did not remain free from custody for a period of five years on any of the California convictions. (See also *People v. Cardenas* (1987) 192 Cal.App.3d 51, 61 ["[A]n admission of prior convictions where the charging information specifically alleges the convictions resulted in prior separate prison terms is deemed an admission such prison terms were separately served."].)

20

The evidence, whether of defendant's admissions alone or together with the documentary evidence, was fully sufficient to support the court's true findings as to all six prison term prior enhancements.

## DISPOSITION

The issues raised on appeal deal solely with proof of the sentencing enhancement allegations. As noted above, the trial court properly admitted into evidence and considered the documentary evidence submitted to prove the prior conviction allegations. The evidence was sufficient to support findings that defendant had suffered at least two prior strike convictions; he was properly sentenced as a third striker. The evidence was also sufficient to support true findings as to each of the six prior prison term one-year enhancements; the prior prison term enhancements were properly imposed. The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MCKINSTER _____

J.

We concur:


HOLLENHORST _____

Acting P. J.


MILLER _____

J.

21